FILED
01 APR -2 AM II: 41
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE CONNECTICUT INDEMNITY
COMPANY,

    Plaintiff,

vs.                                    CASE NO. CV-00-J-381-S

JAMES R. SMITH POULTRY & PRODUCE
COMPANY, INC.; WESLEY RANDALL
GABLE; WAUSAU INSURANCE COMPANY,

    Defendants.

ENTERED
APR - 2 2001

## MEMORANDUM OPINION

    Currently pending before the court are cross-motions for summary judgment (docs. 17, 18 and 20), and evidentiary submissions (doc. 19). The parties all filed memoranda in support of their respective motions. Defendant James R. Smith Poultry & Produce Company, Inc. ("Smith") and Wausau Insurance Company ("Wausau") also filed a response to the plaintiff's and to defendant Wesley Randall Gable's ("Gable") motions for summary judgment (doc. 21). Plaintiff filed a brief in reply to Smith, Wausau, and Gable's motions and Smith and Wausau thereafter filed a reply brief to plaintiff's opposition. Smith also filed a request for oral argument. This court finds that oral argument will not substantially assist the court, and therefore denies said request.



## I. Procedural History

Plaintiff commenced this action by filing a complaint for declaratory judgment alleging that the policy of insurance it issued to Gable should not be the primary policy for purposes of providing insurance to Gable for an accident in which he was involved. Complaint at ¶ 4, 11, 21. Defendant Wausau has counterclaimed for declaratory judgment that it is not required to provide coverage to Smith or Gable under these circumstances. Demand for Relief by Defendant (docs. 6 and 7). Defendant Smith made a similar claim. Demand for Relief by Defendant (doc. 8). Defendant Gable has counterclaimed and also cross-claimed against Wausau for coverage. Answer, Counterclaim and cross-claim (doc. 9).

The facts of this case are not in dispute. Gable is the owner-operator of a tractor-trailer under exclusive lease to Smith. Gable depo. at 9, 11; exhibit 3 to York depo. Pursuant to this lease, Gable was solely responsible for maintenance of the truck and for his own fuel costs. Gable depo. at 12-13, 15, 35-37. He had the right to turn down a load if he did not want to take it, but could not drive his truck for a company other than Smith. *Id.*, at 11-12, 40, 46. Smith had liability coverage with Wausau, which undisputedly covered Gable when he was driving his truck for Smith. *Id.* at 16. Gable also had a "bobtail" policy of insurance, which covered the truck when Gable was not carrying a load for Smith.[1] *Id.* at 17, 44. Smith had a group policy from which each of their owner-operators could obtain

---

[1] The term "bobtail" refers to driving the tractor without the trailer. Gable depo. at 39. This coverage is also known as "non-trucking liability" insurance. York depo. at 34.

bobtail coverage, which was the option Gable selected. York depo. at 34-35. This coverage was through the plaintiff. Gable depo. at 16-17. According to Gable, he was required to have the bobtail insurance policy to cover him when he was not under a dispatch load, such as driving without the trailer or with the trailer empty. *Id.* at 44. Gable paid for the bobtail policy himself, to protect him from liability when he was not operating in the business of Smith. *See* Response of Smith and Wausau (doc. 21) at 3.

On February 4, 2000, Gable was involved in an accident in which one person was killed and two were seriously injured. Complaint at ¶ 11; Gable depo. at 8. That accident is the subject of three pending state court cases in Cullman County, Alabama. Plaintiff's Exhibits 7-9. The plaintiff was presented a claim under its policy on the basis that, at the time of the accident, Gable was driving the tractor, without the trailer, to have work done on the vehicle. Complaint at ¶ 13. Gable states the purpose of the work was to increase the gas milage. Gable depo. at 18.

Under his lease with Smith, Gable was paid a percentage of profits from each load he pulled for Smith. Gable depo. at 15-16. As such, the defendants each argue that the purpose of the work was of benefit solely to Gable.[2] Plaintiff argues that this work would have benefitted Smith as well. While plaintiff admits its policy was in effect at the time of the accident, it wants its policy to be secondary to Wausau Complaint at ¶ 4, 20.

---

[2]The evidence is undisputed that Gable paid for the gas he used himself. The less gas he used, the more per run he earned, as he paid for all expenses involved in each run out of his own pocket. Gable depo. at 36, 45.

3

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue

for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### III. Legal Analysis

Because this case was submitted to the court on cross-motions for summary judgment, and the court finds that the underlying facts of this case are not in dispute, the court finds that this case may be wholly resolved by ruling on the pending motions.

The plaintiff argues that it is not the primary insurer. Gable argues plaintiff's policy (the bobtail coverage) is supposed to cover him when he is not carrying a load, as was the case here. Gable bases this argument on the language in the bobtail policy which states the coverage is excluded when "a covered 'auto' is used on the business of anyone to whom the 'auto' is rented. *See* complaint at ¶ 14. Gable argues he was not on the business of Smith at the time of the accident. Thus, the question before this court is whose benefit Gable was serving when he took the truck in for repairs. Plaintiff's insurance is the primary policy if this trip by Gable was for his own benefit and not Smith's. Gable depo. at 44.

The day before the accident, Gable took his truck to the repair shop, Williams' Detroit Diesel, in Birmingham, which did not have time to complete the work that evening. Gable

depo. at 19, 38. He went home and the following morning, picked up a load in Huntsville, came back to his house and left the loaded trailer there. He called the dispatcher to let Smith know where he was and started back to the repair shop, bobtailing, when the accident occurred.[3] *Id*. at 19, 22, 27; complaint at ¶ 13. He stated that he considered the trip from his home in Cullman to Huntsville to pick up the load to be within his job. Gable depo. at 26-27. He did not log the trip from Cullman to the repair shop because he did not consider himself to be on duty. *Id*. at 20, 27-28. He only considers himself on duty if he is going to get a load or pulling a load. *Id*. at 28.

Gable testified that he was taking the truck in for repairs to increase the milage to make each trip he made more profitable to himself.[4] He stated "This was more -- not a mechanical problem involving safety, but for my personal income." Gable depo. at 14, 15. Gable stated he considered himself on a personal errand and not on duty. *Id*. at 28. He alleged that the truck was simply not getting the milage he thought it should. *Id*. at 14. Gable argues that when the policy is construed for the benefit of the insured, he is entitled to coverage. When specifically asked at his deposition whether he considered the trip to the repair shop in Birmingham to be of benefit to Smith as well as himself, he replied "I mean, it wasn't anything – it was not a safety problem. It was only a financial problem to me." *Id*. at 29-30.

---

[3]Gable testified he had to have the load in Chicago on Monday, which would have been February 7, 2000. Gable depo. at 24. This would have been three days after the date of the accident.

[4]He also testified that if the lease agreement became unprofitable to him, he would not renew it the following year. Gable depo. at 14.

The insurance policy at issue here contains an endorsement which is titled "TRUCKERS -- INSURANCE FOR NON-TRUCKING USE." Under that heading, the following language appears:

1. The following exclusions are added:

    This insurance does not apply to:

    a. A covered "auto" while used to carry property in any business.

    b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.

Commercial Lines Policy, submitted as Exhibit 1 to plaintiff-counterclaim defendant Connecticut's Evidentiary submission in support of summary judgment (doc. 19).

Plaintiff argues that Gable had to be "in the business" of Smith at the time of the accident because the lease between Gable and Smith states that Smith has "exclusive possession, control and use of the equipment for the duration of the lease." Therefore, the plaintiff argues that the "business use" exclusion, cited above, applies here because Gable's effort had to be for Smith's benefit. Smith's Vice-President of Operations, David York, stated he did not consider Gable to be on the business of Smith at the time of the accident. York depo. at 10, 25.

Gable also disputes this he was providing any benefit to Smith. He testified that he was not getting the milage he thought he should be and it was cutting into his profits, as the owner/operator of the truck. This particular repair was of no benefit to Smith. Gable depo. at 14.

The plaintiff relies on a number of cases which this court finds to be apposite. For example, unlike the facts before the court in *National Continental Ins. Co v. Empire Fire and Marine Ins. Co.*, 157 F.3d 610, 613 (8th Cir.1996), these repairs were not done to hold the tractor "ready at all times for service," but rather to increase Gable's profits, as the truck owner. This is of no benefit to Smith. If plaintiff's argument was accepted by this court, the plaintiff would never have to pay benefits on a bobtail policy, which Gable was required to have. This would make the requirement that Gable have bobtail coverage nonsensical, as an insurer would never have to pay on any such policy when the truck is under lease to a third party. However, this is the very situation in which such coverage is required. The plaintiff's argument would make the exclusion in question always apply and hence render the coverage useless. *See* plaintiff's brief at 9-10 ("Smith Poultry was responsible for damages arising from Gable's accident, whether or not the truck was being used in Smith's business at the time of the accident").

The plaintiff argues that these repairs must have been for Smith's benefit because Gable was in the middle of carrying out his dispatch orders and had not yet delivered his load. Plaintiff's memorandum at 9. The plaintiff also argues that the repairs were for the benefit of Smith. The court interprets the evidence before it otherwise. Under no set of facts would the truck's gas milage have any effect on Smith. Gable paid for the gas he used himself.[5] Gable depo. at 30, 35-36, 40; Smith's brief at 2, citing Lease, submitted as

---

[5]Although Smith had agreed to advance Gable the money for the repairs because he was short on money, Gable would have ultimately paid for the repairs himself and hence this payment arrangement does not affect the issue of for whose benefit this work was to be done. See Gable depo. at 22, 23. In fact, Gable paid for all maintenance himself. Gable depo. at 15.

8

plaintiff's exhibit 2. York further explained that the increased fuel costs of Gable did not affect the company, but would have decreased Gable's profitability. The only benefit Smith gets from Gable's profitability is that the company needs them to be successful. York depo. at 31. He further stated that the one to one and a half miles per gallon difference between what Gable was getting and what he though he should be getting would not really cause Gable to make more stops on a long trip because the trucks have large gas tanks. It would only affect the profitability of the run. York depo. at 31-32.

In *Hartford Insurance Co. v. Occidental Fire & Casualty Company of North Carolina*, 908 F.2d 235, 237 (7th Cir. 1990), the court considered the federal regulations which require the lessee to "assume complete responsibility for the operation for the duration of the lease." 49 C.F.R. § 1057.12(c)(1). In that case, the court found that the lessee was liable for damages regardless of whether the truck was being used in the business of the lessee at the time of the accident. The fact that this holding rendered the bobtail policy worthless was discussed by the court in *Liberty Mutual Ins. Co. v. Connecticut Indemnity Co.*, 857 F.Supp. 1300, 1306-07 (N.D.Ind.1994); *aff'd* 55 F.3d 1333 (7th Cir.1995). This court accepted the *Hartford* court's resolution of the phrase "in the business of" as "occasions when the truck is being used to further the commercial interests of the lessee." *Liberty Mutual*, 857 F.Supp at 1307, citing *Hartford Insurance*, 908 F.2d at 239. *See also Hartford Insurance*, 908 F.2d at 238 ("The fact that Lykes was leasing the truck is evidence that it was being used in Lykes's business, but it is not dispositive. To hold otherwise would render Rich's coverage a nullity").

Similarly, the court in *Connecticut Indemnity Co. v. Stringfellow*, 956 F.Supp. 553 (M.D.Penn. 1997) found that the owner, who was in an accident on the way to wash his truck, was acting for his own benefit and not for the benefit of the lessee.[6] This court agrees with the plaintiff that the "business use" exclusion under the policy is not ambiguous. Plaintiff's memorandum at 11. The court does disagree with the plaintiff that the lessor here was "in the business of the lessee at the time of the accident.[7]

Defendant Wausau argues that its policy does not cover Gable at the time of the accident because the truck was not being used in Smith's business. Wausau's brief at 7. Wausau and Smith rely on *Great West Casualty v. Norris*, 734 F.2d 697 (11th Cir. 1984), which was decided under Georgia law.[8] In that case, the court found that the owner of the truck was not covered under the lessee's policy because he was acting outside the scope of his duties. Wausau thus extrapolates that Gable is not an insured under its policy when he acts for his own benefit.

---

[6]Interestingly, after asking the court to adopt this argument, Wausau further states that the court should stop short of following the *Stringfellow* case however, because the court in that case found that federal law made the carrier (Smith) absolutely liable for operation of the tractor during the lease period. In an attempt to distinguish that from the facts before this court, Wausau argues that the issue of Smith's liability for Gable's actions is not before this court. Response of Smith and Wausau at 5 (doc. 21). As Smith has not cross-claimed against Gable, the court finds this distinction from *Stringfellow* to be well taken.

[7]The court notes that while the plaintiff repeatedly states that Smith's interests were furthered by Gable improving his gas milage, the plaintiff has offered no evidence of what benefit to Smith this could possibly serve.

[8]The court notes that none of these cases are binding on this court. However, given that this court is within the 11th Circuit, it does have a preference for relying on 11th Circuit non-binding precedent as opposed to 7th or 8th Circuit non-binding precedent.

David York, Smith's dispatcher, stated he did not consider Gable to be in the business of Smith at the time of this accident. York depo. at 25. Wausau argues that the bobtail coverage is to protect Gable from liability when he is not operating for Smith and hence, under these circumstances, plaintiff's insurance should apply.

## IV. Conclusion

The court having considered the arguments of the parties, the facts of this case and the relevant law, the court finds that the plaintiff has a duty to provide primary insurance coverage to Gable under the circumstances before the court. The court therefore **DENIES** the plaintiff's motion for summary judgment against all defendants in this case. The court **GRANTS** the defendants Gable, Smith and Wausau's motions for summary judgment against plaintiff. The court **DECLINES** to rule on whether the defendant Wausau's policy provides any coverage to the facts before the state trial court, as this issue is solely tangential to the facts before this court and as such finds Gable's cross-claim for summary judgment against Wausau to be **MOOT.**[9] The court further **ORDERS** that this case be and hereby is **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the ___2___ day of April, 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[9] The court bases this ruling on the fact that the case before it is one based in contract interpretation and not *respondeat superior*. This court makes no findings as to what liability Smith may or may not have as Gable's lessee and hence does not need to delve into what liability Wausau may have as a result of the underlying accident.